UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHAUHEEN SOHRABI, | ) | Case No. 1:12CV00007 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| MARGARET BRADSHAW, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| | ) | |

On December 28, 2011, Petitioner, Shauheen Sohrabi ("Petitioner"), executed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 that was filed in this Court on January 3, 2012. ECF Dkt. #1.  He seeks relief for alleged constitutional violations that occurred during his Cuyahoga County, Ohio Court of Common Pleas convictions for two counts of kidnapping, two counts of robbery, and one count of impersonating a police officer.  ECF Dkt. #1[1].

On March 29, 2012, Respondent, Margaret Bradshaw, Warden of the Richland Correctional Institution, in Mansfield, Ohio, filed a Return of Writ.  ECF Dkt. #5.  On August 22, 2012, Petitioner filed a Traverse.  ECF Dkt. #8.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's federal habeas corpus petition in its entirety with prejudice:

I.  **SYNOPSIS OF THE FACTS**

The Eighth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403

---

[1]  Page numbers in this report and recommendation refer to the Page ID# in the electronic filing system.

(1999).  As set forth by the Ohio Court of Appeals, the facts are:

> In March 2010, Sohrabi was indicted in a five-count indictment: two counts of kidnapping, in violation of R.C. 2905.01(A)(2); two counts of robbery, in violation of R.C. 2911.02(A)(2); and one count of impersonating a police officer, in violation of R.C. 2921.51(E).  Sohrabi pleaded not guilty to the charges, and the matter proceeded to a bench trial.
>
> The state presented the testimony of the two victims: Leo Vovk and Jim Diezic.  According to their testimony, on November 23, 2009, they drove into the parking lot of Timko's bar when a black Crown Victoria, which they believed to be an undercover police vehicle, approached their car.  The driver of the Crown Victoria, later identified as Sohrabi, ordered them over a "radio" to exit their vehicle with their hands up and to get face down on the ground.  Diezic testified that Sohrabi pushed "something" into his back that he assumed was a gun.  Sohrabi told the victims that they were under arrest as part of a sting operation.  He also flashed a badge.
>
> Once the victims were on the ground, Sohrabi searched their pockets.  According to Diezic, Sohrabi ordered him to empty his pockets onto the hood of the vehicle. Diezic complied, placing "over a hundred bucks" and his phone on the hood of Sohrabi's car.  Vovk testified that Sohrabi asked for his money and "ID," which he had in his back pocket.  Vovk further testified that Sohrabi took Diezic's wallet and placed it in the front seat of Sohrabi's car.
>
> Although the victims thought that Sohrabi, who they eventually recognized as an acquaintance at Timko's bar, was possibly playing a "prank,," they thought otherwise once he placed them in the back of his car and sped out of the parking lot, going at least 100 miles per hour.  The victims were unable to open the back doors of Sohrabi's vehicle from the inside.  They further testified that Sohrabi then drove to a nearby deserted parking lot behind a warehouse, where he purportedly radioed for "back up" and was met by another male.  Vovk eventually escaped after Sohrabi ordered him out of the vehicle.  According to Diezic, Sohrabi then placed him in the other male's vehicle and they drove back to Timko's, where Diezic was able to jump out of the car and run into the bar.
>
> The trial court ultimately found Sohrabi guilty of all five counts and sentenced him to a total of five years in prison.  The trial court further informed Sohrabi that he was subject to a mandatory term of five years of postrelease control.

ECF Dkt. #5-9 at 85-86.

## II.     PROCEDURAL HISTORY

### A.     State Trial Court

In its January 2010 term, the Cuyahoga County, Ohio Grand Jury indicted Petitioner on: two counts of kidnapping in violation of Ohio Revised Code ("ORC") § 2905.01(A)(2); two counts of robbery in violation of ORC § 2911.02(A)(2); and one count of impersonating a police officer in violation of ORC § 2921.51(E).  ECF Dkt. #5-2 at 40-42.

-2-

On July 6, 2010, the Cuyahoga County Court of Common Pleas issued a nunc pro tunc entry as of June 16, 2010 indicating that the court had previously found Petitioner guilty on all counts as charged in the indictment and imposed a total of five years of imprisonment for all counts. ECF Dkt. #5-4 at 51. The trial court had sentenced Petitioner to three years of imprisonment on each of the first four convictions, with each sentence to run concurrently with the other three, and the court sentenced Petitioner to two years of incarceration on the impersonation conviction to run consecutively with the other sentence. *Id*.

**B**. **Direct Appeal**

On July 1, 2010, Petitioner, through trial counsel, filed a notice of appeal and asserted the following assignment of error:

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY NOT GRANTING DEFENDANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIM. R. 29.

Issue No. 1 presented for review:
Whether the trial court erred to the prejudices of the Defendant-Appellant in failing to grant his Motions for Acquittal pursuant to Ohio Rules of Criminal Procedure where the evidence was insufficient to sustain a conviction for offense of robbery

Issue No. 2 presented for review:
Whether there was insufficient evidence to prove kidnapping since the State must show the commission of a robbery

Issue No. 3 presented for review:
Whether the court erred in denying the Motions for Acquittal and failing to find the Defendant-Appellant not guilty

ECF Dkt. #5-6 at 54 and ECF Dkt. #5-7 at 58, 61-65.

On April 21, 2011, the Ohio appellate court affirmed the trial court's judgment and sentence, overruling Petitioner's assignment of error. ECF Dkt. #5-9 at 82-89.

**C**. **Supreme Court of Ohio**

On June 17, 2011, Petitioner pro se filed a notice of appeal and motion for delayed appeal to the Supreme Court of Ohio. ECF Dkt. #5-10 at 91. The Supreme Court of Ohio granted Petitioner's motion for delayed appeal on August 24, 2011 and ordered Petitioner to file his memorandum in support of jurisdiction within thirty days. ECF Dkt. #5-11 at 92.

On September 28, 2011, the Supreme Court of Ohio dismissed Petitioner's appeal for failure to prosecute because he failed to file a memorandum in support of jurisdiction in compliance with the Rules of Practice of the Supreme Court of Ohio.  ECF Dkt. #5-12 at 93.

On October 7, 2011, Petitioner pro se filed a motion for reconsideration in the Supreme Court of Ohio, asserting that he was unable to comply with filing the memorandum in support of jurisdiction due to his trial attorney's failure to send him the Ohio appellate court brief that was submitted on his behalf and "the Bankrupt Postal System" which delayed in delivering his memorandum in support of jurisdiction to the Clerk of Courts.  ECF Dkt. #5-13 at 94-97. Petitioner attached a copy of the letter that he received from the Clerk of Courts for the Supreme Court of Ohio dated September 27, 2011 which indicated that his memorandum in support of jurisdiction was due on September 23, 2011, but the Clerk did not receive the memorandum until September 26, 2011.  *Id.*  The Deputy Clerk explained that pursuant to Rule 14.1(D) of the Rules of Practice of the Supreme Court of Ohio, he could not accept the untimely memorandum in support of jurisdiction and was returning it to Petitioner unfiled.  ECF Dkt. #5-13 at 99.

On November 30, 2011, the Supreme Court of Ohio denied Petitioner's motion for reconsideration without opinion.  ECF Dkt. #5-14 at 102.

### III.    28 U.S.C. § 2254 PETITION

On December 28, 2011, Petitioner pro se executed the instant petition for a writ of federal habeas corpus which was filed on January 3, 2012.  ECF Dkt. #1.  Petitioner raises the following grounds for relief:

> GROUND ONE:
>
> VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS
>
> (a)    Supporting Facts:
>
> The trial court erred by finding defendant guilty at a bench trial in violation of the constitutional rights under the 6th and 14th Amendments, without sufficient Evidence.
>
> GROUND TWO:
>
> FAILING TO GRANT MOTIONS FOR ACQUITTAL

-4-

(a)    Supporting Facts:

The trial court erred to the prejudices of the defendant-appellant in failing to grant his motions for acquittal pursuant to Ohio Rules of Criminal Procedure where the Evidence was insufficient to sustain a conviction for the offense of robbery, kidnapping and felonious assault.

GROUND THREE:

FAILING TO FIND DEFENDANT-APPELLANT NOT GUILTY

(a)    Supporting Facts:

The trial court erred in denying the motions for acquittal and failing to find the defendant-appellant not guilty

ECF Dkt. #1 at 5-10.  On March 29, 2012, Respondent filed a Return of Writ.  ECF Dkt. #5.

On August 22, 2012, Petitioner filed a Traverse.  ECF Dkt. #8.

## IV.    **PROCEDURAL BARRIERS TO REVIEW**

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.    **Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not currently at issue in this case.

### B.    **Exhaustion of State Remedies**

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts."

*Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted). In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id*. at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the

-6-

claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.   **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).   In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman v. Thompson,* 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (emphasis removed).   When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).   In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule.  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991).  Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman,* 501 U.S. at 729-30; *Richey* v. *Mitchell*, 395 F.3d 660, 678 (6th Cir. 2005)("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar

arises).  Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision.  *Munson*, 384 F.3d at 313-14.  Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 751.  "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).

The above standards apply to the Court's review of Petitioner's claims.

## V.     STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

-8-

(d)     An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be granted
with respect to any claim that was adjudicated on the merits in State
court proceedings unless the adjudication of the claim –

    (1)     resulted in a decision that was *contrary to*, or involved an
*unreasonable application of*, clearly established Federal law,
as determined by the Supreme Court of the United States; or

    (2)     resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the

language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the
> state court arrives at a conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case differently than this Court
> has on a set of materially indistinguishable facts. Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if the state court
> identifies the correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Furthermore, the Supreme Court declared that "a

federal habeas court making the 'unreasonable application' inquiry should ask whether the state

court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating

on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue

the writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly. Rather, that application

must also be unreasonable." *Id.*; *see also Bailey v. Mitchell*, 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA

limitations:

    A.     Decisions of lower federal courts may not be considered.

    B.     Only the holdings of the Supreme Court, rather than its dicta, may be
considered.

    C.     The state court decision may be overturned only if:

        1.     It '[applies] a rule that contradicts the governing law set forth
in [Supreme Court of the United States] cases,' [the Supreme

-9-

        Court precedent must exist at the time of petitioner's direct appeal] or;

2.     the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3.     'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4.     the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.     Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.     Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice."  *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

        (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## VI.  ANALYSIS

### A.  PROCEDURAL DEFAULT-ALL GROUNDS FOR RELIEF

Respondent asserts that Petitioner has procedurally defaulted all of his Grounds for Relief because he failed to present them to the Supreme Court of Ohio.  ECF Dkt. #5 at 26.  The undersigned agrees and recommends that the Court find that Petitioner has procedurally defaulted all of his Grounds for Relief.

A petitioner commits a procedural default "by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures."  *Carter v. Mitchell*, No. 06-4238, - - -F.3d- - -, 2012 WL 3854787 (6th Cir. Sept. 6, 2012 ), quoting *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir.2006) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)) (internal quotation marks omitted).  In order to avoid a procedural default of a ground for relief, a federal habeas petitioner "must have exhausted his or her remedies in state court."  *Carter*,  2012 WL 3854787, at *6, citing *O'Sullivan,* 526 U.S. at 842, 119 S.Ct. 1728 and 28 U.S.C. § 2254(b)(1)(A). A federal claim is considered exhausted once it has been "fairly presented" at the first possible opportunity within "one complete round of the State's established appellate review process."  *Carter*, 2012 WL 3854787, at *6, quoting *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir.2004); *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir.2004).  An unexhausted claim is procedurally defaulted if the petitioner fails to exhaust state

-11-

court remedies and state law no longer allows the petitioner to raise the claim. *Carter*, 2012 WL 3854787, at *6, citing *Williams*, 380 F.3d at 967.

In addition, when "a petitioner has failed to fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted." *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir.2009).

Here, Petitioner failed to raise his claims before the Ohio Supreme Court.  While that court granted his motion for delayed appeal, he did not comply with the court's order to file his memorandum in support of jurisdiction by September 23, 2011.  ECF Dkt. #5-11 at 92, ECF Dkt. #5-14 at 102.  In order to determine whether procedural default bars the instant petition, the undersigned must apply the four-pronged *Maupin* test.  The undersigned recommends that the Court find that the first prong of the *Maupin* test is met because Petitioner failed to comply with the applicable procedural rules of the Ohio Supreme Court.  Section 2 of Rule 2.2(A)(4)(b) of the Rules of Practice for the Supreme Court of Ohio provides that if the Supreme Court of Ohio grants a motion for delayed appeal, the petitioner must file his memorandum in support of jurisdiction within thirty days after the court granted the motion for delayed appeal. Ohio S.Ct. Prac. R. II, § 2.2(A)(4)(b).  That Rule further states that if the memorandum in support of jurisdiction is not timely filed after the Ohio Supreme Court grants the motion for delayed appeal, "the Supreme Court will dismiss the appeal." *Id.*  Petitioner did not timely file his memorandum in support of jurisdiction and the Ohio Supreme Court dismissed his delayed appeal for failure to prosecute based upon his noncompliance with its order to file his memorandum in support of jurisdiction.  ECF Dkt. #5-12 at 93.  Therefore, Petitioner has failed to comply with a procedural rule which satisfies the first prong of the *Maupin* analysis.

The second *Maupin* factor is satisfied because the Ohio Supreme Court did indeed enforce the procedural bar by dismissing Petitioner's delayed appeal due to his failure to timely comply with the filing requirement.  ECF Dkt. #5-12 at 93.  .

The third factor of *Maupin* is also met because the Ohio Supreme Court's denial of Petitioner's delayed appeal due to his failure to timely file his memorandum in support of

-12-

jurisdiction constitutes an adequate and independent state procedural ruling that bars federal review of the merits of the petition.  *Grant v. Hudson*, No. 1:08CV815, 2010 WL 5186432, at *4 (N.D. Ohio, Nov. 23, 2010), unpublished (petitioner's failure to timely file memorandum in support of jurisdiction as ordered by Supreme Court of Ohio and that court's dismissal of delayed appeal constitutes adequate and independent state ground to bar federal habeas corpus review), citing *Nethers v. Sheldon*, 2010 U.S. Dist. LEXIS 115749, *13 (S.D.Ohio 2010), *Schroyer v. Moore*, 2007 U.S. Dist. LEXIS 63811, *22, 2007 WL 2492312 (S.D.Ohio 2007), *James v. Warden*, 2007 WL 2326867,*4 (S.D.Ohio 2007); *Levy v. Ohio*, 2008 U.S. Dist. LEXIS 8726, *15, 2008 WL 339480 (N.D.Ohio 2008), Report and Recommendation adopted by No. 1:08CV815, 2010 WL 5186411 (N.D. Ohio Dec. 15, 2010), unpublished.

The Court can still consider Petitioner's constitutional arguments if Petitioner has shown cause to excuse the procedural default and actual prejudice resulting from the alleged constitutional error.  *Maupin*, 785 F.2d at 138-139.  "Demonstrating cause requires a showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006), quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed. 2d 397 (1986).  In order to demonstrate prejudice, a petitioner must show actual prejudice and not merely a possibility of prejudice resulting from the alleged constitutional error.  *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995), quoting *U.S. v. Frady*, 456 U.S. 152, 168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).   The Sixth Circuit has added that "the prejudice component of the cause and prejudice test is not satisfied if there is strong evidence of the petitioner's guilt and a lack of evidence to support his claim."  *Perkins*, 58 F.3d at 219, quoting *Rust v. Zent*, 17 F.3d 155, 161-162 (6th Cir .1994), and citing *Frady*, 456 U.S. at 168.

As cause, Petitioner in this case submits that he had difficulties obtaining from his appellate counsel the documents filed in his Ohio appellate court case and he alleges trouble with the prison mailing system.  Attorney error amounting to ineffective assistance cannot constitute cause "where the error caused a petitioner to default in a proceeding in which the petitioner was

not constitutionally entitled to counsel, including a discretionary appeal" to the state's highest court. *Tanner v. Jeffreys*, 516 F.Supp.2d 909, 916 (N.D.Ohio 2007) (quoting *Barkley v. Konteh*, 240 F.Supp.2d 708, 714 (N.D.Ohio 2002), in turn citing *Coleman*, 501 U.S. at 751–53); *see also Wilson v. Hurley*, 382 F. App'x 471, 478 (6th Cir.) (and cases cited therein), *cert. denied*, – U.S. –, 131 S.Ct. 576, 178 L.Ed.2d 421 (2010). However, the right to the effective assistance of counsel does not end as soon as the appellate court issues its decision and appellate counsel must inform his client of the outcome of the appellate proceeding. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 433-435 (6th Cir. 2006). Here, Petitioner did have a copy of the Ohio appellate decision as he submitted it with his motion for delayed appeal filed on June 17, 2011 to the Supreme Court of Ohio. ECF Dkt. #5-10 at 91. Thus, receipt of the Ohio appellate opinion from counsel is not at issue.

The question therefore is whether Petitioner has stated sufficient cause to excuse his procedural default with his allegation that appellate counsel was ineffective by not providing him with a copy of the appellate brief that was filed in the appellate court so that he could use it in his memorandum in support of jurisdiction before the Supreme Court of Ohio. The record shows that Petitioner attached an affidavit to his motion for delayed appeal with the Supreme Court of Ohio attesting the difficulties he had securing the appellate documents from his counsel. *See* http//ww.sconet.state.oh.us. Petitioner also attached a copy of a letter dated May 18, 2011 that he wrote to his counsel requesting the appellate documents in his case. *Id.* Petitioner was therefore aware at that time of the importance of obtaining these documents to present to the Supreme Court of Ohio. He does not explain, however, why he waited until months later, and after his delayed appeal was granted, in order to make a second attempt to obtain the documents from counsel. ECF Dkt. #1 at 11. He indicates that he sent his counsel another written request, but not until September 6, 2011, only two weeks before his memorandum in support of jurisdiction was due, and he did not seek alternative ways of obtaining the documents until closer to the deadline when he sent his father to the appellate court to obtain the documents, which were then not sent to him until September 20, 2011. *Id.*; *see also* ECF Dkt. #5-13 at 100. Moreover, Petitioner had access to the only issue that his appellate counsel raised on appeal as Petitioner attached a copy

-14-

of the appellate opinion to his motion for delayed appeal which outlined the argument made by his appellate counsel as to the issue of insufficiency of the evidence presented against him.

Nevertheless, even if appellate counsel's failure to turn the appellate brief over to Petitioner could constitute adequate cause to excuse the procedural default, the undersigned recommends that the Court find that Petitioner cannot show actual prejudice resulting from such an error.  As cited above, the Sixth Circuit has held that "the prejudice component of the cause and prejudice test is not satisfied if there is strong evidence of the petitioner's guilt and a lack of evidence to support his claim."  *Perkins*, 58 F.3d at 219, quoting *Rust*, 17 F.3d at 161-162, and citing *Frady*, 456 U.S. at 168.  The undersigned recommends that the Court find that such is the case here.

The testimony of the victims at the bench trial supports the trial court's determination that Petitioner was guilty on all counts and establishes that strong evidence existed of Petitioner's guilt and that evidence is lacking to  support his claim.  Ohio's kidnapping statute, Section 2905.01(A)(2) of the Ohio Revised Code, at the relevant time, provided that: "(A) [n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found * * * for any of the following purposes: (2)  To facilitate the commission of any felony..." Ohio Rev. Code § 2905.01(A)(2).  Section 2911.02(A)(2) of the Ohio Revised Code set forth the elements charged for the robbery offenses, providing that: "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another."  Ohio Rev. Code § 2911.0(A)(2).  And finally, Ohio Revised Code section 2921.51(E) sets forth the crime of impersonating certain officers, providing in relevant part that: (E) no person shall commit a felony while impersonating a peace officer, private police officer, federal law enforcement officer, officer, agent, or employee of the state..." Ohio Rev. Code § 2921.51(E).

The trial court heard the evidence and found Petitioner guilty of all of the charges in the indictment, that is, two counts of kidnapping, two counts of robbery, and one count of impersonating a police officer.  ECF Dkt. #5-4 at 51; ECF Dkt. #5-15 at 230-237.  As to

-15-

kidnapping, both victims testified that they drove together into the parking lot of Timko's bar on November 23, 2009 when what they believed to be an uncover police car, a black Crown Victoria, quickly approached their car and someone from the car got on the car's loudspeaker radio and ordered them to step out of their car.  ECF Dkt. #5-15 at 116-117.  They testified that they initially thought it was a joke because Mr. Diezic had met the man before who was commanding the actions.  *Id*. at 117.  However, Mr. Vovk testified that he believed Petitioner was a police officer after Petitioner repeatedly told them over the loud speaker that it was an undercover sting operation and they were going to be arrested.  *Id*. at 119-120.  Mr. Vovk testified that when they were on the ground, Petitioner searched his back pocket for his wallet and identification.  *Id*. at 120.  He testified that Petitioner then ordered them into Petitioner's car.  *Id.* at 120-121.  Mr. Vovk testified that once in Petitioner's car, Mr. Diezic, who knew Petitioner, tried to "call his bluff," thinking that Petitioner was pulling a prank on them, but then Petitioner "showed us his badge and you know, he goes, You think I'm playing, you think I'm playing."  *Id*. at 121, 156.  Mr. Vovk stated that Mr. Diezic kept calling Petitioner a "bullshitter" and kept saying "[c]ome on, let's go in the bar," and "[c]ome on Shauheen," when Petitioner then said "[y]ou think I'm playing...[y]ou guys are under arrest...and then "jammed the car in reverse, peeled out of there doing 100 miles an hour down the road, and then he gets on his radio and called for backup."  *Id*. at 157.  Mr. Vovk heard Petitioner say over the radio, "open the gate, I got two guys."  *Id*.  Mr. Vovk testified that he then "thought it was a real sting."  *Id*. at 121.  He further testified that Petitioner drove them to a dark back parking lot with no one around.  *Id*. at 122-123.  Mr. Vovk indicated that another individual then pulled up in a van and Petitioner ordered him out of the car and to put his hands on the back of the car.  *Id*. at 123-124.  Mr. Vovk testified that he could not get out of the back of the car because it was locked from the outside and he thought "this might be legit, I mean, the fact that it wouldn't open up, this is a real police car."  *Id*. at 125.  He also testified that Petitioner told him that if he did not cooperate, "he was going to taser me."  *Id*. at 164.  When Petitioner took Mr. Vovk out of and to the back of the car and told him to get into the other person's van, Mr. Vovk pretended to jump over the fence and instead rolled under the van and hid there for twenty minutes and then crawled out and walked

-16-

back to the bar.  *Id.* at 126-128.

Mr. Diezic, the other victim, testified that he picked Mr. Vovk up after work on November 23, 2009 and they went to Timko's bar to have a few drinks, went back to his house to meet his wife for a few hours and then went back to Timko's bar.  ECF Dkt. #5-15 at 183.  Mr. Diezic testified that he was driving his work van which had a light out in the back and he told Mr. Vovk that he had to watch driving that night because of the burned out light.  *Id*. at 185.  He stated that he was driving to the bar when what he thought was an undercover police car pulled up right behind him and proceeded to pull right in front of his van when he pulled into the back parking lot of the bar.  *Id.* at 185-186.  He testified that after the car pulled up in front of his, the person in the car immediately got on a loud speaker from the car radio and ordered them out of the van, to face the van, and to lie face down on the ground and not to move.  *Id*. at 186-187.  Mr. Diezic testified that the person then came up behind him and when he asked what was going on,  the person said "It's a stolen vehicle and shut the F up or I'll kill you."  *Id*. at 187.  Mr. Diezic testified that this person pushed something into his back that he presumed was a gun, and then told them to get off of the ground, head toward his car, and empty the contents of his pockets onto the hood of his car, which he did.  *Id.*; ECF Dkt. #5-15 at 209-210.  He testified that he put about $100 on the hood of the car and his phone.  *Id*.  He testified that he then got a glimpse of the person and realized that it was Petitioner, who he recognized as an acquaintance from the bar.  *Id*. at 187-188.

Mr. Diezic further testified that after he recognized Petitioner and they put their hands on the front of his car, he told them to get into the back seat of his car and he closed the door.  ECF Dkt. #5-15 at 191.  Mr. Diezic testified that he then said to Petitioner, "Shaun, I go, what the hell, what's going on here?  And then he starts rambling about this and that and, You're under arrest, and he shows me a badge and I'm like, You're arresting us for what?  Just babbling bullcrap."  *Id*.  Mr. Diezic then told Petitioner, "either you're arresting us or I'm getting out of the car," but when he tried to exit the car, the door would not open.  *Id*. at 192.  He then told Petitioner that if Petitioner was joking, he had gone too far and if he would let them go, they would just walk

-17-

away.  *Id*.  Mr. Diezic testified that Petitioner would not let them out of the car and when he told Petitioner that he was kidnapping them, Petitioner said, "You want to see kidnapping," and jammed the car in reverse and raced through an intersection at high speed, and "radios in that he's got two suspects coming in, so open the gate."  *Id*.  Mr. Diezic indicated that Petitioner drove them to the back end of a parking lot behind a building where another car was waiting.  *Id*.

Mr. Diezic testified that Petitioner got Mr. Vovk out of the car and he saw Mr. Vovk on the ground outside when Petitioner ran back to his car and told Mr. Diezic that Mr. Vovk escaped.  ECF Dkt. #5-15 at 196.  Mr. Diezic indicated that Petitioner then parked his car and put Mr. Diezic into the other car with them and they went to pursue Mr. Vovk.  *Id*.  However, Mr. Diezic stated that "they basically didn't really pursue looking for him.  They went up to the bar." *Id*.  Mr. Diezic testified that he got out of the other car and went into the bar.  *Id*.  He stated that he stayed in the bar until Petitioner and the other individual left and he then went home and called the police.  *Id*.  When he called the police, he asked if they had an undercover police officer that kept a car on the street where he and Mr. Vovk were taken and he was told that the police department had no undercover police officers.  *Id.*  at 199.  He was asked if he had been drinking and he responded that he had, but he told them about where to find the car that looked like an undercover police car.  *Id*.  He testified that the police told him to come to the station the next morning to make a report and refused to go to the parking lot where the car was left.  *Id*. at 199-200.  Mr. Diezic testified that a couple of days later, he was contacted by an officer who had indicated that someone else made a report that coincides with what Petitioner had done to him. *Id*. at 200.  The officer wanted him to make a report, but Mr. Diezic said he did not want to do so because the police did not care three days ago when he called to report the incident.  *Id*.  He thereafter did make a statement and was shown a photo array.  *Id*.

Based upon the testimony of the victims, the trial court had sufficient evidence to find beyond a reasonable doubt that Petitioner committed the robbery offenses.  Both of the victims testified that Petitioner threatened them via the loud speaker of the car radio to get out of their car and onto the ground and to lie face down in the parking lot.  The testimony establishes that

Petitioner committed a theft offense against Mr. Diezic by taking his money and he attempted to commit a theft offense by searching Mr. Vovk's back pocket and requesting his money and identification, although he did not take them.  ECF Dkt. #5-15 at 119-120, 154, 186-187, 191-192 Mr. Diezic also testified that Petitioner pushed something into his back during this time that he presumed was a gun, and Petitioner told them to get up off of the ground, head toward Petitioner's car, and empty their pockets and put the items on the hood of his car, which they did. *Id*. at 209-210.  This testimony suffices to establish the robbery offenses.

The testimony also establishes the kidnapping offenses in that it showed that Petitioner removed Mr. Vovk and Mr. Diezic by threat of force or at a minimum, by deception, from the parking lot of Timko's bar where they were found after the robberies were committed and after he flashed a badge and told them they were part of a sting operation and would be arrested.  ECF Dkt. #5-15 at 118-123, 119-120, 135, 154, 186–187, 191-192.  The evidence further establishes that Petitioner transported the victims in his car at a high rate of speed to another location and the victims were unable to open the back doors of the car in order to escape.  *Id.*

Finally, the testimony before the trial court established the elements of the crime of impersonating a police officer in that the victims testified that Petitioner committed robbery and kidnapping offenses against them under the guise of being a police officer in that Petitioner drove a car that they believed was an old police car, they testified that he called out to them from a car radio speaker and commanded that they lay on the ground, and he told them they were part of a sting operation and were under arrest, and he flashed a badge at them.  ECF Dkt. #5-15 at 118-123, 135, 191-193, 199, 201-202.

For these reasons, the undersigned recommends that the Court find that ample evidence existed upon which the trial court could find that Petitioner committed the offenses of kidnapping, robbery and the impersonation of a police officer.  Accordingly, the undersigned recommends that the Court find that Petitioner has failed to show the requisite prejudice necessary in order to overcome the procedural default bar.

-19-

Petitioner also asserts that his low IQ should excuse his untimely filing in the Supreme Court of Ohio. However, the Sixth Circuit has held that "a borderline mental impairment is not cause for excusing procedural default." *Johnson v. Wilson*, 187 Fed. Appx. 455, 458 (6th Cir. 2006).

Beyond *Maupin*, the Court can still consider the instant petition if the Court determines that it is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent..." *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed. 2d 397 (1986). The Sixth Circuit Court of Appeals explained that the "actual innocence" exception, or the "fundamental miscarriage of justice" gateway, is open to a petitioner who submits new evidence showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004), quoting *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)(quoting *Murray*, 477 U.S. at 496. The Sixth Circuit held that "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.*

As to actual innocence, Petitioner has produced no new evidence to carry this burden and he makes no claims of actual innocence, instead challenging the sufficiency of the evidence presented against him and asserting that "the facts point to a practical joke by a mentally challenged individual." ECF Dkt. #8 at 253.

### B.   MERITS REVIEW – ALL GROUNDS FOR RELIEF

If the Court decided to find that Petitioner has not procedurally defaulted his grounds for relief, the undersigned would recommend that the Court find no merit to those grounds for relief based upon the same evidence that the undersigned cited in support of the analysis performed in the prejudice prong of the *Maupin* analysis..

The undersigned first notes that each of Petitioner's three grounds for relief allege trial court error in failing to grant his motion for acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure because insufficient evidence was presented to convict him. ECF Dkt. #1 at

5-8. Claims challenging a state court's ruling on a motion for acquittal are not cognizable in federal habeas corpus review because a federal court may review a state prisoner's habeas corpus petition only on the grounds that his challenged confinement violates the Constitution, laws or treaties of the United States. *Jones v. Welch*, No. 3:10CV1173, 2011 WL 1832780 (N.D. Ohio May 13, 2011)(citations omitted), Report and Recommendation adopted by 2011 WL 3022008 (N.D. Ohio July 22, 2011). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Id.* Accordingly, a claim that a trial court violated its own state laws is not cognizable in federal habeas corpus unless the denial of such a motion violates due process or equal protection. *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).

The undersigned recommends that the Court find that Petitioner has not presented a federal constitutional error that warrants federal habeas corpus review. Moreover, Petitioner's underlying issue in all three grounds for relief concerns the sufficiency of the evidence presented to convict him of kidnapping, robbery and impersonation of a police officer. A review of the evidence presented in order to convict Petitioner establishes the existence of no contrary or unreasonable application of United States Supreme Court precedent or facts of record.

An allegation that the verdict was entered upon insufficient evidence states a claim under the due process clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *reh'g denied*, 444 U.S. 890 (1979), *and In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In order to establish an insufficiency of the evidence claim, the relevant inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000), *quoting Jackson,* 443 U.S. at 319. When reviewing the sufficiency of the evidence, a habeas court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for the jury. *See United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir.1995). Moreover, the inquiry is not whether the trier of fact made the *correct* determination of guilt or innocence, but whether it

-21-

made a *rational* decision to acquit or convict.  *Williams v. Haviland,* No. 1:05CV1014, 2006 WL 456470, \*3 (N.D.Ohio Feb. 24, 2006), citing *Herrera v. Collins,* 506 U.S. 506 U.S. 390, 401-02, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).  In determining whether the state court's determination was objectively unreasonable, the Court must first determine whether the evidence was sufficient to convict under *Jackson*.  *See Pinchon v. Myers*, 615 F.3d 631, 643 (6ᵗʰ Cir. 2010).  If sufficient evidence exists with which to convict, the inquiry ends.  *Id.*  If the Court finds that the evidence is insufficient to convict, then it must apply the AEDPA deference standard and determine whether the Ohio appellate court's determination as to the trial court's verdict was "objectively unreasonable" in concluding to the contrary, keeping in mind that it is looked at "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.,* quoting *Tucker v. Palmer,* 615 F.3d 631, citing *Jackson*, 443 U.S. at 319.  This is the "double layer" of deference due a state court determination about the sufficiency of the evidence. *Brown v. Konteh*, 567 F.3d 191, 205 (6ᵗʰ Cir. 2009).  A District Court is not permitted to overturn a conviction merely because it would have acquitted had it acted as the finder of fact.  *Brown v. Davi*s, 752 F.2d 1142, 1147 (6ᵗʰ Cir. 1985), and *Walker v. Engle,* 703 F.2d 959,  969 (6ᵗʰ Cir. 1983).

The Ohio appellate court in this case cited to *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), the Supreme Court of Ohio case citing to *Jackson*, in determining the proper standard of review for a sufficiency of the evidence claim.  ECF Dkt. #5-9 at 86.  The appellate court applied that standard and concluded that any rational juror could have found that the state proved all of the elements of robbery and kidnapping under Ohio law beyond a reasonable doubt.  *Id*. at 87-88.  As the undersigned has set forth in the preceding section concerning Petitioner's failure to show actual prejudice to excuse his procedural default, the testimony of record presented evidence such that any rational juror could have found the state proved all the elements of the crimes for which Petitioner was convicted.

The victims testified that Petitioner threatened them over the car's loud speaker to get face down on the ground in the parking lot and took money from Mr. Diezic and attempted to commit a theft offense by searching Mr. Vovk's back pocket and requesting his money and identification,

although he did not take them. ECF Dkt. #5-15 at 119-120, 154, 186-187, 191-192 . Mr. Diezic also testified that Petitioner pushed something into his back during this time that he presumed was a gun, and Petitioner told them to get up off of the ground, head toward Petitioner's car, and empty their pockets and put the items on the hood of his car, which they did. *Id*. at 209-210. This testimony suffices to establish robbery against each victim.

The kidnapping offenses were also sufficiently established as the victims testified that Petitioner removed Mr. Vovk and Mr. Diezic by threat of force or at a minimum, by deception, from the parking lot of the bar where the victims were first found after Petitioner committed the robberies and after he flashed a badge and told them they were part of a sting operation and would be arrested. ECF Dkt. #5-15 at 118-123, 119-120, 135, 154, 186–187, 191-192. The evidence further established that Petitioner transported the victims in his car at a high rate of speed to another location and the victims were unable to open the back doors of the car in order to escape. *Id.*

Lastly, the testimony sufficiently established the crime of impersonating a police officer as the victims testified that Petitioner committed robbery and kidnapping offenses against them under the guise of being a police officer as he flashed a badge at them, drove a car that they believed was an old police car and called out to them over a car radio speaker and commanded that they lay on the ground, and he told them they were part of a sting operation and were under arrest. ECF Dkt. #5-15 at 118-123, 135, 191-193, 199, 201-202.

For these reasons, the undersigned recommends that the Court find that the Ohio appellate court's determination was not contrary to or an unreasonable application of United States Supreme Court precedent or the facts of record as any rational trier of fact could have found the essential elements of kidnapping, robbery and impersonation of a police officer were proven beyond a reasonable doubt.

## VII.   **CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that the Court find that Petitioner has

procedurally defaulted all of his Grounds for Relief because he failed to present them to the Supreme Court of Ohio and has failed to establish actual prejudice to avoid the procedural bar and has otherwise failed to show a fundamental miscarriage of justice.

Should the Court find that Petitioner has overcome the bar of procedural default, the undersigned alternatively recommends that the Court find no merit to his grounds for relief because all of the grounds concern the sufficiency of the evidence and the Ohio appellate court's determination on this issue was not contrary to or an unreasonable application of United States Supreme Court precedent or the facts of record.  Moreover, any rational trier of fact could have found the essential elements of kidnapping, robbery and impersonation of a police officer were proven beyond a reasonable doubt.

Accordingly, the undersigned recommends that the Court DISMISS the instant petition in its entirety with prejudice.  ECF Dkt. #1.


DATE: March 19, 2013                              _/s/ George J. Limbert_____
                                                 GEORGE J. LIMBERT
                                                 UNITED STATES MAGISTRATE JUDGE


        ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).